T.S. HARTZELL
325 West Franklin Street, #103
Tucson, Arizona 85701
(520) 792-8181
Arizona State Bar # 013862
Pima County Computer # 64555
tshart@dakotacom.net

Attorney for Defendant Burgos-Valencia

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | |
| Plaintiff, | 05-cr-00125-001-TUC-DCB(BPV) |
| vs. | **AMENDED MOTION FOR COMPASSIONATE RELEASE PRIOR TO SENTENCE EXPIRATION** |
| Leonardo Burgos-Valencia, | |
| Defendant. | |

Defendant Burgos-Valencia, through counsel, hereby amends his prior pro se motion and supplements (CM/ECF #s 1443, 1444, 1445) and moves the Court to reduce his sentence of 288 months and allow his immediate release pursuant to 18 U.S.C. § 3582(c)(1).

Pertinent Case History and Exhaustion of Administrative Remedies

The United States has held Mr. Burgos-Valencia in custody since his arrest on December 19, 2004. A grand jury indicted him on eleven charges, nine of which were possessing marijuana with the intent to distribute. The other two counts were continuing criminal enterprise and using a minor in drug transaction.

Leonardo Burgos-Valencia spent four days in a jury trial in November, 2007, before the Court declared a mistrial. Early in 2008, a new trial was commenced and finished, with a jury finding Burgos-Valencia guilty of all but count 20, one of the marijuana possession with intent charges.

At sentencing, this Court found that Burgos-Valencia was criminal history category 1 with an advisory guideline offense level of 38. The Court sentenced him to 288 months on the continuing criminal enterprise conviction, 288 months on counts 11 and 15, and 60 months each

on the remaining counts–all to be served concurrently.

Mr. Burgos-Valencia appealed the conviction and the sentence. The Ninth Circuit found that convictions for both conspiring to possess marijuana with the intent to distribute and continuing criminal enterprise subjected Burgos-Valencia to double jeopardy. The Ninth Circuit remanded to this Court to dismiss one of the two counts at its discretion and resentence the defendant. The Court dismissed the conspiracy conviction (count 11) and resentenced Burgos-Valencia to essentially the same sentence–a total time in custody of 288 months.

Leonardo Burgos-Valencia petitioned the Supreme Court for certiorari, and was denied. He filed a 28 U.S.C. § 2255 petition, which was denied. He sought a sentence reduction pursuant to Amendment 782 to the United States Sentencing Guidelines, which was also denied. The denial of the Amendment 782 petition found that the continuing criminal enterprise conviction was statutorily ineligible despite its relying on U.S.S.G. §2D1.1 to calculate the base offense level and its inclusion as drug offense in grouping of closely-related counts.

Mr. Burgos-Valencia now seeks a sentencing reduction under 18 U.S.C. § 3582(c)(1). He first filed an administrative request for compassionate release on November 26, 2019. This was denied on December 26, 2019 and appealed on December 31, 2019. The appeal was denied. Burgos-Valencia tried again on January 8, 2020, requesting compassionate release a second time. This was denied shortly thereafter and appealed on May 6, 2020. The institution accepted the appeal on May 21, 2020, and denied it on June 16, 2020.

Leonardo Burgos-Valencia filed his first motion (#1443), as a letter to the Court, on April 3, 2020. He followed the letter with a motion (#1444) on June 1, 2020, and an addendum (#1445) on June 25, 2020. He has twice exhausted the administrative remedies available to him for the failure of the Bureau of Prisons to bring a motion on his behalf.

The Bureau of Prisons now predicts, allowing for good time credit, it will release Burgos-Valencia on June 25, 2025.

<u>Reasons to Order the Release of Leonardo Burgos-Valencia</u>

*Sone Subjective Assessments of His Character*

What first stands out about Leonardo Burgos-Valencia is the willingness of his former lawyers to vouch for his character; all who have spoken of him remember his honesty and rectitude. Such attributes, granted, are rare among criminals and Burgos-Valencia has never denied his long-term involvement with shipping marijuana from Mexico to the United States. Nonetheless, he has made a deep and lasting impression on his lawyers.

Fernando Gaxiola, who died several years ago, asked current counsel to see if he could help Burgos-Valencia gain release from prison. Of all his clients, Mr. Gaxiola said a week before his death, only Burgos-Valencia stood out as someone deserving of clemency. Not, Mr. Gaxiola was quick to add, because he was innocent of his crimes, but rather because of his character attributes. Fernando Gaxiola described Leonardo Burgos-Valencia as a man loyal to his family, his word and his moral code–a gentleman, to use an outdated term.

The same day the appointment to write this motion was published to interested parties, Steve Ralls called current counsel and echoed Mr. Gaxiola's sentiments. Mr. Ralls, who continues to correspond with Mr. Burgos-Valencia, also finds Mr. Burgos-Valencia to be a jewel in the dust and urged counsel to expend all possible efforts as this client was worthy of that.

Even lawyers for the codefendants in Burgos-Valencia's case have volunteered how impressed they were with his honesty and generosity of spirit. All in all, a most unusual tribute for a man deeply involved in a business often known for its cruelty and callousness.

*The Objective Evidence Strongly Favors Compassionate Release*

While these subjective insights into the nature and character of Mr. Burgos-Valencia may give the Court a sense of who this man is and the impact he has on others, the objective evidence, as well, supports an early and compassionate release. First, for context, consider that Burgos-Valencia has served 188.6 months in custody. A simple division would show he has served over 65% of the 288 month sentence. However, when one calculates the good time credit, relying on the Bureau of Prisons math and figures, it shows the actual sentence to be served as 246.23 months. Of that term, Leonardo Burgos-Valencia has completed 76.6%.

Mr. Burgos-Valencia is 67 years-old and will turn 68 next March.[1] His health is not good. According to his prison medical records, he has had, as a result of renal malignant carcinoma, a kidney and two ribs removed and a history of problems with the remaining kidney,. On top of that, Burgos-Valencia suffers from high blood pressure, obesity, and hyperlipidemia. He is prescribed medication for high blood pressure and the lipid disorder.[2]

These conditions put Leonardo Burgos-Valencia at high risk for complications from Covid-19 infection. The Centers for Disease Control and Prevention (CDC) list the following among other medical conditions found to increase risk: kidney disease and obesity. The CDC suspects high blood pressure of increasing risk for severe illness, as well.[3] Of course, Burgos-Valencia falls within the age range found to be at elevated risk for severe illness or death should he contract Covid-19. The CDC reports 8 out of 10 deaths from this disease occur in persons 65 years-old or older.[4]

Leonardo Burgos-Valencia is losing teeth, mobility, range of motion for his joints and is seeing a serious deterioration in physical health as a result of the aging process. In addition to the conditions outlined above Burgos-Valencia is experiencing prostate issues.

Mr. Burgos-Valencia has taken advantage of educational opportunities while incarcerated. He has completed a number of business courses, from an introduction to business to courses focusing on business management, accounting and business law. Burgos-Valencia has finished several English as a second language courses and an English conversation class. He has studied

---

[1] One of the pro se pleadings, CM/ECF # 1444, mistakenly lists Burgos-Valencia's birth year as 1963. The correct year is 1953. That pleading also listed an incorrect day. How these mistakes came about is not yet known.

[2] Counsel has Mr. Burgos-Valencia's prison medical records and will provide them to the government or the Court to verify these conditions should either request them. Counsel is not attaching medical records as an exhibit in respect of Mr. Burgos-Valencia's privacy

[3] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

computers, ceramics, math, leather work, typing, GED classes, even yarns and crocheting. While the report from prison does not show an actual GED test, which may be because Burgos-Valencia is not allowed to be rewarded with an equivalency degree because of his immigration status, his practice test scores are high enough not only to earn a degree, but also to receive college credit.

While Leonardo Burgos-Valencia recalls being reprimanded in prison shortly after he was sentenced, counsel can find no record of disciplinary action in the voluminous reports he has received. No records show he was ever denied privileges or commissary or docked good time credit.

*Equitable Considerations*

Leonardo Burgos-Valencia trafficked in no drug other than marijuana. Societal attitudes towards this drug have changed and legal production of cannabis in the United States now dwarfs the amounts smuggled by Burgos-Valencia and coconspirators. In fact, in July, 2020, just in Arizona, over 18,647 pounds of legal marijuana was sold in this state's dispensaries.[5]

The change in attitude towards marijuana is reflected in reduced advisory guideline ranges for trafficking in quantities of that drug. Amendment 782 to the United States Sentencing Guidelines reduced from level 38 to level 36 the most serious of Burgos-Valencia's marijuana violations. While this Court found Burgos-Valencia did not qualify for a reduction in sentence because of the continuing criminal enterprise conviction, the Ninth Circuit held that the CCE offense and the level 38 conspiracy were for the same conduct and remanded to this Court to dismiss one or the other of the offenses. This Court exercised its discretion and dismissed the conspiracy charge. While Burgos-Valencia concedes the Court was legally correct in its decision, equity supports a reduction in sentence at this time, under a different rationale.[6]

---

[5] Source: Arizona Department of Health Services, Arizona Medical Marijuana Program, July 2020 Monthly Report.

[6] Had the Court dismissed the CCE count, the advisory guideline level for the offense would be 36, with a corresponding range of 188 -235 months.

5

*Family Situation*

Mr. Burgos-Valencia points out his wife, seven years older than he is, is being treated for diabetes and high blood pressure. She is even more at risk for serious illness from Covid-19 than he is. Burgos-Valencia would be residing with her when he is released.

<u>The U.S.S.G. §1B.13 and 18 U.S.C. §3553(a) Factors</u>

18 U.S.C. §3582(c)(1) requires, for an early release, that the Court review the 18 U.S.C. 3553(a) factors, that extraordinary and compelling reasons warrant a reduction, and that such a reduction complies with the policy statements issued by the Sentencing Commission. The referred-to policy statements are fond at U.S.S.G. §1B.13.

Looking first at the policy statements, that section requires an extraordinary and compelling reason, that the defendant is not a danger to the safety of any other person or to the community, and the reduction is consistent with the policy statement. Application note 1(B) provides one of the rationales;

> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

Also of interest is Application note 1(D), a cover-all provision, which allows the Court to find an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

The 18 U.S.C. §3553(a) factors, numbingly familiar, direct the Court to first look at the offense, here, marijuana trafficking, and next the need for the sentence imposed. The offense is now deemed less serious than at the time it was committed and "just punishment" for selling wholesale marijuana must also be seen as lower than it was at the time of the original sentencing. A sixty-month reduction, from 288 months to 228 months, would allow Burgos-Valencia's release and still satisfy the requirements for both general and specific deterrence.

Burgos-Valencia respects the law, as shown by his adherence to the rules of prison. He is no danger to the public–he never possessed a weapon, made threats, or injured anyone. The

sum of his danger was supplying a drug that is now available to persons 21 and over to use recreationally in eleven states and the District of Columbia, and for medical use in 42 states.

There is no need to provide restitution and there are no obvious sentence disparity issues. Furthermore, this sentence would comport with the advisory guidelines and policy statements. The proposed sentence, 228 months, would be twelve months less than the advisory minimum for level 38 imposed in 2008 and near the top of a level 36 offense.

Conclusion

Leonardo Burgos-Valencia has been a model prisoner who has earned the respect of many whom he has met. Sentenced to 24 years in prison for ongoing marijuana offenses, Burgos-Valencia has grown old and feeble during the almost 16 years he has been in custody. He is extraordinarily susceptible to the current pandemic.

Leonardo Burgos-Valencia has been a quiet and compliant prisoner who is fully rehabilitated. He asks that he be allowed to return to his family and spend his remaining years with his wife and children.

Dated September 6, 2020.

                                              s/ T.S. Hartzell
                                              T.S. Hartzell,
                                       Attorney for Burgos-Valencia